UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| TAMMIE BICKFORD | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:07-cv-295 |
| | ) | |
| v. | ) | |
| | ) | |
| LIFE CARE CENTER OF AMERICA | ) | |
| d/b/a LIFE CARE CENTER OF | ) | |
| SPARTA and SPARTA MEDICAL | ) | |
| INVESTORS, LP, | ) | Chief Judge Curtis L. Collier |
| | ) | |
| Defendants. | ) | |

### MEMORANDUM

Before the Court is a motion for summary judgment filed by Defendants Life Care Center of America and Sparta Medical Investors, LP, (Court File No. 26). Plaintiff Tammie Bickford responded (Court File No. 34) and Defendants replied (Court File No. 41).[1] For the following reasons, the Court will **GRANT IN PART** and **DENY IN PART** Defendants' motion. The Court will **DISMISS** Plaintiff's claims of interference regarding her absences in 2006. However, the Court will DENY Defendants' motion as to the remainder of Plaintiff's claims, including interference due to her termination and retaliation for asserting a protected right.

**I.     FACTS**

Plaintiff worked as a Restorative Certified Nursing Assistant (RNA) for Defendants from

---

[1] Defendants also moved to strike portions of Plaintiff's response (Court File No. 40) and Plaintiff responded to that motion (Court File No. 43). The Court has considered these arguments in its review of the record.

2001 to 2007. During the end of her employment, Plaintiff began having numerous medical problems for which she took time off from work. She was absent May 1 to May 8, 2006, for major fatigue; July 25 to 30, 2006, and August 2 to 6, 2006, for sinusitis; and February 26 to March 5, 2007, for bronchitis and pneumonia (Court File No. 34, pp. 3-5). Her supervisor, Chuck Lancaster (Lancaster), disapproved of her absences and disciplined her on February 1, 2007, for missing six days in the previous 12 months (Court File No. 26, ex. 2, pp. 29-30).

After her absence in February and March 2007, Plaintiff talked to the highest-ranking human resources representative, Debra Prater (Prater), about taking time off under the Family and Medical Leave Act (FMLA) since she no longer had any sick or vacation days left and her doctor, Dr. MacManus, told her she might have to miss more work due to her uncontrolled blood pressure and other problems. Plaintiff filled out an FMLA leave request form (Court File No. 26, ex. 3, pp. 55-56) and Prater gave Plaintiff a medical certification form for her doctor to fill out (*Id.* at pp. 58-61). Dr. MacManus, Plaintiff's doctor, faxed the certification form to Prater on March 14, 2007 (*Id.* at 57). After giving Plaintiff an opportunity to make corrections to the form, Prater granted her FMLA leave request and back-dated it to cover the February to March absence (Court File No. 26, ex. 4, p. 12). Lancaster was upset Plaintiff was taking time off and allegedly threatened to fire her if she missed any more days (Court File No. 26, ex. 2, p. 10).

Shortly after Plaintiff's FMLA request was granted, on March 20, 2007, Plaintiff and a coworker Paula Scott (Scott) got into an argument. The parties agree a resident of the center set off her alarm by attempting to stand up. Plaintiff asserts the coworker, who was closer to the resident, watched until Plaintiff arrived, and then said it was about time Plaintiff got up and did something (Court File No. 26, ex. 2, p. 17). Plaintiff asked Scott to repeat herself and told Scott she was doing

2

her job while Scott almost let the resident fall out of her chair (*Id.*). Plaintiff asserts Scott threatened to beat her up, at which point, Plaintiff suggested talking to their supervisor, Lancaster (*Id.*).[2] Plaintiff found Lancaster in the dining room and says he initially refused to talk to her, but then walked to his office, where Plaintiff told him what happened (*Id.* at p. 19). According to Plaintiff, she said "I'm about ready to pull out my hair and hers too" (*Id.* at p. 21). Lancaster, however, testified Plaintiff told him she was going to tear Scott's hair out and she could not go back to working with Scott (Court File No. 26, ex. 3, pp. 24-25). According to Lancaster, Plaintiff was very angry, "verging on what [he] would consider out-of-control anger, threatening, red-faced, red-skinned. That was her demeanor at that time" (*Id.* at 40). Neither Lancaster nor Plaintiff allege she threatened Scott directly (Court File No. 26, ex. 3, p. 27; Court File No. 26, ex. 2, p. 21). Lancaster told her he would get Scott's side of the story, but Plaintiff did not hear anything else until she was called into a meeting to be terminated (Court File No. 26, ex. 2, p. 19). Lancaster decided to recommend Plaintiff be terminated, "[a]fter it became clear and evident that she was not safe to be out with the residents and the other staff, specifically Paula Scott" (Court File No. 26, Ex. 3, p. 28) and discussed the event with Kim Parrish (Parrish), who suggested talking to the director of nursing, Stacey Demps (Demps).

The termination meeting was attended by Parrish, Demps, and Lancaster. According to Plaintiff, she attempted to tell her side of the story, but Parrish said she did not want to hear it (Court File No. 26, ex. 2, pp. 12-14). Parrish, on the other hand, testified Plaintiff confirmed Lancaster's version of events and said she meant her threat (Court File No. 26, ex. 5, pp. 24-26, 32-33), which

---

[2]Scott substantially corroborates Plaintiff's story, although she alleges Plaintiff initiated the argument (Court File No. 26, ex. 7, pp. 6-7).

3

is consistent with Demps's testimony (Court File No. 26, 3x. 6, p. 18), although Plaintiff denies making the threat or saying she meant it (Court File No. 26, ex. 2, p. 13). According to the Termination Form filled out by Lancaster, and signed by Plaintiff[3] and Parrish, Plaintiff was "hostile and verbally loud" and had threatened a coworker in his presence (Court File No. 26, ex. 2, p. 32). The reason for termination is listed as: "Threatening and intimidating to fellow associate. Using obscene language in the presence of facility residents" (*Id.*). According to Parrish, this was not the first time Plaintiff had an altercation with a coworker, although she was not disciplined for the first instance and Parrish was able to calm her down (Court File No. 26, ex. 5, pp. 36-40). Lancaster and Parrish both indicated part of the decision to terminate Plaintiff based on this event was motivated by the fact neither party could diffuse the situation such that Plaintiff would be able to return to work (Court File No. 26, ex. 3, p. 27; ex. 5, p. 40).

## II.   STANDARD OF REVIEW

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party must demonstrate no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003). That is, the moving party must provide the grounds upon which it seeks summary judgment, but does not need to provide affidavits or other materials to negate the non-moving party's claims. *Celotex*, 477 U.S. at 323. The Court

---

[3] Plaintiff asserts she was unable to read the termination form since she did not have her reading glasses (Court File No. 26, ex. 2, p. 16), but the other parties to the termination meeting do not recall her stating she could not read the form (Court File No. 26, ex. 3, p. 39; ex. 5, p. 41).

4

views the evidence, including all reasonable inferences, in the light most favorable to the non-movant. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). However, the non-movant is not entitled to a trial based solely on its allegations, and must submit significant probative evidence to support its claims. *Celotex*, 477 U.S. at 324; *McLean v. Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). The moving party is entitled to summary judgment if the non-movant fails to make a sufficient showing on an essential element for which it bears the burden of proof. *Celotex*, 477 U.S. at 323. In short, if the Court concludes a fair-minded jury could not return a verdict in favor of the non-movant based on the record, the Court may enter summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986); *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

### III. DISCUSSION

The Family and Medical Leave Act (FMLA) provides eligible employees with up to 12 weeks of leave per 12-month period when the employee suffers from "a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). A serious health condition is defined as "an illness, injury, impairment, or physical or mental condition that involves . . . (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." § 2611(11).

The Court of Appeals for the Sixth Circuit acknowledges two theories of recovery under the FMLA. *Edgar v. JAC Products, Inc.*, 443 F.3d 501, 507-08 (6th Cir. 2006). The "entitlement" or "interference" theory recognizes employers may not "interfere with, restrain, or deny the exercise

5

or attempt to exercise any right provided" by the FMLA. 29 U.S.C. § 2615(a)(1). The "retaliation" or "discrimination" theory arises from the provision making it "unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." 29 U.S.C. § 2615(a)(2).

Plaintiff asserts Defendant violated the FMLA by interfering with her rights under the FMLA and retaliating against Plaintiff when she asserted her FMLA rights. Defendant seeks summary judgment on both claims, arguing Plaintiff has failed to establish a prima facie case of interference or retaliation.

**A.     Interference**

Plaintiff alleges Defendants interfered with the exercise of her FMLA rights by disciplining her for absences that were covered under the FMLA, treating her with hostility, forcing her to return to work early, and terminating her. Defendants claim Plaintiff was not entitled to take FMLA leave because Plaintiff did not have a serious health condition and did not give Defendants notice of her intent to invoke the protection of the FMLA.

It is "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under" the FMLA. 29 U.S.C. § 2615(a)(1). Specifically, "[a]n employer is prohibited from interfering with, restraining, or denying the exercise of (or attempts to exercise) any rights provided by the Act." 29 C.F.R. § 825.220(a)(1). To succeed on an FMLA interference claim, Plaintiff must show: "(1) [s]he was an eligible employee; (2) the defendant was an employer as defined under the FMLA; (3) the employee was entitled to take leave under the FMLA; (4) the employee gave the employer notice of [her] intention to take leave; and (5) the employer denied the employee FMLA benefits to which [s]he was entitled." *Walton v. Ford*

*Motor Co.*, 424 F.3d 481, 485 (6th Cir. 2005) (citing *Cavin v. Honda of Am. Mfg., Inc.*, 346 F.3d 713, 719 (6th Cir. 2003)). The first two elements are not in dispute in this case.

### 1. Serious Health Condition

Defendants assert Plaintiff has no serious health condition that would entitle her to leave under the FMLA. Plaintiff's medical absences during her employment were allegedly due to her uncontrolled blood pressure, sinusitis, non-insulin dependent diabetes mellitus and hyperlypidemia, and inpatient treatment for pneumonia and bronchitis.

Employers covered by the FMLA are required to grant leave to eligible employees "[b]ecause of a serious health condition that makes the employee unable to perform the functions of the employee's job." 29 C.F.R. § 825.112(a)(4). A serious health condition is "an illness, injury, impairment, or physical or mental condition that involves . . . (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." 29 U.S.C. § 2611(11).

Inpatient care is defined as "an overnight stay in a hospital, hospice, or residential medical care facility, including any period of incapacity . . . or any subsequent treatment in connection with such inpatient care." 29 C.F.R. § 825.114. Although the FMLA does not generally cover minor or short-term illnesses, complications that arise from such illnesses can be serious health conditions. 29 C.F.R. § 825.113(d). According to Plaintiff, she was admitted to the hospital on February 26, 2007, after a diagnosis of pneumonia and bronchitis, and was released February 28, 2007 (Court File No. 34, p. 5; ex. 2, p. 65). Under the plain language of the regulation, this was a "serious health condition" as an illness that involved inpatient care. Thus, Plaintiff was entitled to FMLA leave for the period of time she was receiving inpatient care in the hospital and subsequent treatment in

connection with the inpatient care. From the record, it is unclear whether Plaintiff was instructed to stay home after her release from the hospital or not. However, as a matter of law, Plaintiff was entitled to FMLA leave for February 26, 27, and 28, 2006.

Plaintiff's other absences did not involve inpatient treatment. Plaintiff alleges she had "[a] serious health condition involving continuing treatment by a health care provider," which is defined as including "[a] period of incapacity of more than three consecutive, full calendar days, and any subsequent treatment or period of incapacity relating to the same condition, that also involves . . . a regimen of continuing treatment under the supervision of the health care provider." 29 C.F.R. § 825.115. Incapacity is defined as "inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefore, or recovery therefrom." § 825.113(b). Plaintiff also claims her uncontrolled blood pressure is a chronic serious health condition, which is covered by the FMLA where it "(1) Requires periodic visits . . . for treatment by a health care provider . . . ; (2) Continues over an extended period of time . . . ; and (3) May cause episodic rather than a continuing period of incapacity." § 825.115(c).

The FMLA only covers serious health conditions that cause periods of incapacity beyond the normal, minor illnesses suffered by most individuals. Plaintiff presented doctor's notes for her medical absences. However, according to Dr. MacManus's deposition testimony, the off-work excuse was not a determination Plaintiff was incapacitated, but rather an assessment the patient was sick and should not "be around other people spreading [her] germs" (Court File No. 45, ex. 4, p. 43). This is insufficient to show Plaintiff suffered from a period of incapacity and was unable to work

8

or perform regular daily activities for more than three consecutive days.[4] Nothing in the record creates a dispute as the whether Plaintiff was incapacitated during her medical absences or whether she simply preferred to stay home. The fact that an employee did not attend work for more than three consecutive days is not proof the employee was incapacitated during that time.

Without any evidence of incapacity lasting more than three days, Plaintiff has not demonstrated a serious health condition as to her absences in 2006. Since Defendants accepted Plaintiff's claim she had a serious health condition in granting her request for FMLA leave and do not dispute this element as to her future absences and her February to March 2007 absence, Plaintiff has clearly established the prima facie element as to her 2007 absence and future absences.

### 2. Notice of Intention to Take Leave

The parties dispute whether Plaintiff gave Defendants adequate notice of her intention to take leave. While an eligible employee need not name the FMLA in requesting leave, the employee must give the employer sufficient notice that the time off would qualify for FMLA coverage in order to trigger a duty of inquiry on the part of the employer. *Brohm v. JH Properties, Inc.*, 149 F.3d 517, 523 (6th Cir. 1998). Once the employee has shown sufficient notice, the employer has the burden of obtaining information regarding whether the leave in fact qualifies for FMLA coverage.

The parties substantially agree on the content of information provided by Plaintiff in connection with her absences and her request for intermittent FMLA leave. Plaintiff submitted doctor's notes and time off requests for her absences (Court File No. 26, ex. 3, pp. 43-52). However, these documents only provide information that Plaintiff was sick for a period of time and not that

---

[4]Plaintiff presents no additional evidence showing she was incapacitated during the absences in question.

she had a serious health condition, which rendered her incapable of working. Thus, even if Plaintiff's non-inpatient absences were for serious health conditions, as a matter of law, Plaintiff did not give substantively sufficient notice to create an inference Defendants knew the leave qualified for FMLA protection. *See Brenneman v. MedCentral Health System*, 366 F.3d 412, 423-28 (6th Cir. 2004). Although the person responsible for FMLA requests, Debra Prater, erroneously believed an employee needed to specifically request FMLA leave (Court File No. 45, ex. 2, pp. 53-54), in this case Plaintiff requested FMLA leave immediately following the only illness that would be considered a serious health condition under the FMLA: the hospitalization in February 2007. After requesting medical certification for Plaintiff's FMLA request, Prater back-dated the forms and covered Plaintiff's absence starting February 26, 2007, under the FMLA (Court File No. 45, ex. 2., pp. 85, 104).

As stated above, Plaintiff has not demonstrated her 2006 absences were due to serious health conditions. However, she further has not shown she gave sufficient notice to Defendants regarding these absences. Thus, Plaintiff has only established the prima facie element as to the absences covered by her FMLA leave request.

### 3. Denial of FMLA Benefits

An employer denies the employee FMLA benefits by refusing to grant FMLA-protected leave or by viewing the taking of FMLA leave as a negative factor in employment actions. *Wysong v. Dow Chemical Co.*, 503 F.3d 441, 447 (6th Cir. 2007). Plaintiff alleges Defendants interfered with her rights under the FMLA by disciplining her for absences that should have been covered under the FMLA (Court File No. 29, ex. 3, pp. 53-54). Plaintiff was written up by her supervisor, Chuck Lancaster (Lancaster), for missing six days within the previous 12 months on February 1,

10

Case 1:07-cv-00295   Document 66   Filed 12/15/08   Page 10 of 15   PageID #: 1439

2007. However, as discussed above, Plaintiff has not established the 2006 absences were due to serious health conditions or Defendants had notice Plaintiff needed FMLA leave for those absences. Thus, any disciplinary action regarding those absences did not interfere with FMLA-protected rights.

Plaintiff also alleges hostility following her request for FMLA leave. According to Plaintiff, after she submitted her FMLA leave request, Lancaster told her he would fire her if she missed any more work (Court File No. 45, ex. 2, pp. 33-34). Plaintiff also asserts she attempted to turn in the corrected FMLA certification paperwork to Lancaster, who said he did not want them (Court File No. 45, ex. 2, pp.69-70). It is clear Lancaster knew Plaintiff requested FMLA leave after Prater gave Plaintiff the requisite paperwork, since Plaintiff, Prater, and Lancaster all testified he was aware of her request (Court File No. 45, ex. 2, pp. 69-70, p. 75; ex. 3, p. 32). Although Lancaster may have erroneously believed he could discipline employees based on FMLA leave (Court File No. 45, ex. 3, pp. 46-47), Plaintiff has not shown a genuine issue as to interference with her FMLA rights since she was able to request and was retroactively granted FMLA leave for her hospitalization and was placed on intermittent FMLA leave for future incapacities (Court File No. 45, ex. 2., pp. 85, 104).

Finally, regarding her termination, in order to show a denial of benefits under the FMLA, Plaintiff must prove by a preponderance of the evidence that her FMLA leave constituted a negative factor in the termination decision. *Cavin* 346 F.3d at 726 (citing *Bachelder v. Am. W. Airlines, Inc.*, 259 F.3d 1112, 1125 (9th Cir. 2001)). Unlike *Cavin*, here Plaintiff's termination was not the culmination of progressive disciplinary action regarding her absences. Although Plaintiff was disciplined for violating the attendance policy, her termination allegedly resulted from an unrelated incident where she argued with a coworker and allegedly created a hostile work environment.

11

However, given the factual dispute regarding whether Plaintiff threatened a coworker in Lancaster's presence or simply vented to a supervisor about a conflict at work, a reasonable jury could find Plaintiff's request for FMLA leave negatively influenced Defendants' decision to terminate her.

In conclusion, the Court will grant Defendants' motion for summary judgment as to Plaintiff's claims of interference regarding her 2006 absences. However, Defendants' motion for summary judgment will be denied as to Plaintiff's claims of interference relating to her termination, which prevented her from taking FMLA-protected leave in the future, due to a genuine issue of material fact as to the facts leading up to her termination.

**B.      Retaliation**

Plaintiff asserts Defendant discriminated against her by terminating her employment in retaliation for her FMLA leave request. Since Plaintiff presents no direct evidence of discrimination, the burden-shifting analysis outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), applies. *Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 315-17 (applying the McDonnell Douglas framework to an FMLA retaliation claim). Plaintiff must establish a prima facie case of retaliation by showing (1) she availed herself of a protected right under the FMLA, (2) she suffered an adverse employment action, and (3) there was a causal connection between the exercise of her rights under the FMLA and the adverse employment action. *Edgar v. JAC Products, Inc.*, 443 F.3d 501, 508 (6th Cir 2006). If Plaintiff meets her burden, Defendant must demonstrate a legitimate, nondiscriminatory rationale for the adverse employment action. *Id.* Plaintiff then has the burden of establishing the proffered reason is pretext to mask discrimination. *Skrjanc*, 272 F.3d at 315.

The parties do not dispute Plaintiff requested FMLA leave, which is a protected right, and

was terminated from her position. Plaintiff asserts there is a causal connection between the request for FMLA leave and the termination due to the closeness in time of the two events. Her termination occurred within six days of showing Lancaster her FMLA paperwork and 15 days of Lancaster telling her he would fire her if she missed any more work. Establishing a prima facie case of retaliation is not intended to be overly burdensome on the plaintiff and temporal proximity is generally sufficient to show causation. *Bryson v. Regis Corp.*, 498 F.3d 561, 571 (6th Cir. 2007). Here, Plaintiff spoke with Prater and requested FMLA leave some time between March 5, when she returned to work following her February hospitalization and March 14, 2007, when she went to MacManus to have him fill out the FMLA certification paperwork. Plaintiff was terminated March 20, 2007. The temporal proximity between the two events is indirect evidence of causation. *See Skrjanc*, 272 F.3d 309, 315 (district court found proximity where more than a month passed between the request for leave and discharge).

Since Plaintiff established a prima facie case of retaliation, the burden shifts to Defendants to establish a nondiscriminatory reason for Plaintiff's termination. Defendants assert the decision to terminate Plaintiff was based on a heated argument at the workplace and Plaintiff was fired for creating a hostile environment. According to Defendants, Plaintiff came to Lancaster and told him she was angry at a coworker and was going to "tear her hair out" (Court File No. 45, ex. 3, p. 34). Lancaster testified Plaintiff said she was mad and could not work around this person any more (*Id.*). Lancaster recommended she be terminated (*Id.* at p. 37). Plaintiff admits to being upset, but claims she told Lancaster she was about to pull her hair out and the coworker's too (Court File No. 26, ex. 2, p. 14). "Disruptive conduct . . . is widely viewed by courts as a legitimate ground for termination." *Hoffman v. Prof'l Med Team*, 394 F.3d 414, 421 (6th Cir. 2005) (citing *Matima v.*

13

*Celli*, 228 F.3d 68, 79 (2d Cir. 2000)). Since Defendants' evidence, "if believed by a trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action," *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993) (emphasis omitted), Defendants have carried their burden of producing a legitimate, non-discriminatory reason for terminating Plaintiff.

Plaintiff asserts the proffered reason is pretext for termination in retaliation for her FMLA request, arguing the termination was motivated by Lancaster's disapproval of her FMLA request. Pretext can be demonstrated by showing either "(1) that the proffered reasons had no basis *in fact*, (2) that the proffered reasons did not *actually* motivate [the] discharge, or (3) that they were *insufficient* to motivate discharge." *Manzer v. Diamond Shamrock Chems. Co.,* 29 F.3d 1078, 1084 (6th Cir. 1994). According to Plaintiff, she went to Lancaster for assistance with a frustrating situation and did not create a hostile work environment (Court File No. 34, p. 20). Thus, Plaintiff claims the proffered reason for termination is false. Since, as stated above, Plaintiff has demonstrated a genuine issue as to the material facts supporting her termination, which is sufficient, at this stage, to call into question whether the proffered basis for Plaintiff's termination actually occurred.

Since Plaintiff has shown a genuine issue as to material facts regarding whether Defendant's legitimate, non-discriminatory reason for her termination is pretext, summary judgment in favor of Defendants is not appropriate.

**IV. CONCLUSION**

For the foregoing reasons, the Court will **GRANT IN PART** and **DENY IN PART** Defendants' motion for summary judgment. The Court will **DISMISS** Plaintiff's claims of

interference relating to her 2006 absences. Plaintiff's claim of interference due to her termination and her claim of retaliation for asserting a protected right remain.

An Order shall enter.

/s/
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**